IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-11393

————————————————

MICHAEL NANCE,

Plaintiff-Appellant,

versus

COMMISSIONER GEORGIA DEPARTMENT OF CORRECTIONS,
WARDEN, GEORGIA DIAGNOSTIC AND CLASSIFICATION PRISON,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

Before WILLIAM PRYOR, Chief Judge, WILSON, MARTIN, JORDAN,
NEWSOM, BRANCH, GRANT, LUCK, LAGOA, and BRASHER, Circuit
Judges.[*]

BY THE COURT:

A petition for rehearing having been filed and a member of this Court in

active service having requested a poll on whether this appeal should be reheard by

---

[*] Judges Robin Rosenbaum and Jill Pryor recused themselves and did not participate in the en banc poll.

the Court sitting en banc, and a majority of the judges in active service on this Court having voted against granting rehearing en banc, it is ORDERED that this appeal will not be reheard en banc.

WILLIAM PRYOR, Chief Judge, joined by NEWSOM and LAGOA, Circuit Judges, statement respecting the denial of rehearing en banc:

A majority of judges voted not to rehear this appeal en banc. As author of the panel-majority opinion, I write to respond to my dissenting colleagues' arguments that the panel opinion is irreconcilable with Supreme Court and circuit precedent and that it leaves some prisoners without a remedy in federal court. Neither charge is true.

Before I discuss the dissent's arguments, I want to set the record straight on a procedural matter: the panel's resolution of this appeal on jurisdictional grounds was not a surprise to the parties. Two weeks before oral argument, the panel directed the parties to be prepared to address our jurisdiction. The panel explained that "[l]ethal injection is the only method of execution authorized by Georgia law," and pointed out that Nance was "seek[ing] an injunction that would foreclose the State from implementing his death sentence under its present law." Given that premise, the panel asked the parties whether "[Nance's] section 1983 claim amount[ed] to a challenge to the fact of his sentence itself that must be reconstrued as a habeas petition," and whether, "[i]f Nance's claim [was] a habeas petition, . . . it [was] second or successive[.]"

In its order to the parties, the panel framed the issue by quoting passages from *Bucklew v. Precythe*, 139 S. Ct. 1112, 1128 (2019) ("An inmate seeking to identify an alternative method of execution is not limited to choosing among those

3

presently authorized by a particular State's law. . . . [But] existing state law might be relevant to determining the proper procedural vehicle for the inmate's claim."), *Hill v. McDonough*, 547 U.S. 573, 582 (2006) ("If the relief sought would foreclose execution, recharacterizing a complaint as an action for habeas corpus might be proper."), and *Nelson v. Campbell*, 541 U.S. 637, 644 (2004) ("In a State . . . where the legislature has established lethal injection as the preferred method of execution, a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself." (citation omitted)). In doing so, the panel gave Nance and his counsel a preview of what would eventually become the majority opinion.

Nance's counsel came to oral argument prepared, and most of the argument was devoted to the jurisdictional issue. And Nance provided supplemental authority on the issue one week after oral argument. The dissent suggests that that panel did not "giv[e] the parties an adequate opportunity to prepare to address the issue," Dissent at 13, but neither party asked the panel to submit supplemental briefing. Our obligation to consider subject-matter jurisdiction *sua sponte* may sometimes catch parties by surprise, but it did not in this appeal.

The dissent's justifications for rehearing Nance's appeal en banc are unpersuasive. The most the dissenters can say about any direct conflict between the panel opinion and Supreme Court precedent is that "[n]one of [the Supreme

4

Court's] vaguely worded dicta [relied on by the panel opinion] is irreconcilable" with the dissent's preferred resolution of Nance's appeal. *Id.* at 12. But even if some other approach would not have been "irreconcilable" with the decisions of the Supreme Court, it does not follow that the panel opinion is itself inconsistent with Supreme Court precedent.

The dissent also suggests the panel opinion is somehow inconsistent with what it claims the Supreme Court *did not* say in *Bucklew*. The dissent says it is "inconceivable" that the Supreme Court would have "emphasized that a prisoner can point to an alternative method of execution authorized in another State," *see Bucklew*, 139 S. Ct. at 1128 ("An inmate seeking to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law."), without pairing that substantive holding with a warning that pleading an unauthorized method might have serious procedural implications. Dissent at 14–15. The Supreme Court apparently found that possibility "inconceivable" as well. Only four sentences after its substantive holding, the Supreme Court issued the exact warning the dissent claims it did not:

> [E]xisting state law might be relevant to determining the proper procedural vehicle for the inmate's claim. . . . [I]f the relief sought in a [section] 1983 action would foreclose the State from implementing the inmate's sentence under present law, then recharacterizing a complaint as an action for habeas corpus might be proper.

5

*Bucklew*, 139 S. Ct. at 1128 (alteration adopted) (internal quotation marks omitted). The panel opinion is consistent with Supreme Court precedent.

The panel opinion is also consistent with circuit precedent. The dissent suggests that it is "well-established in our circuit that, not only can a prisoner plead a method of execution not authorized under state law, but [section] 1983 is the proper avenue of relief, and, as a corollary, such claims cannot be brought in habeas." Dissent at 13. But the opinions the dissent cites in support of its claim do not establish any such blanket rule for method-of-execution challenges. One of the opinions did not involve a method-of-execution challenge at all. *See Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006) ("On appeal, Hutcherson frames his issue for review as . . . a denial of [his] rights to counsel as envisioned in the Sixth Amendment to the United States Constitution and Due Process of Law as envisioned in the Fifth and Fourteenth Amendments to the United States Constitution[.]"). And the other opinions involved garden-variety challenges to specific lethal-injection procedures that clearly did not imply the invalidity of the entire sentence. *McNabb v. Comm'r Ala. Dep't of Corr.*, 727 F.3d 1334, 1344 (11th Cir. 2013) (prisoner's claim that "an ineffective first drug or improper administration of a first drug in a three-drug protocol would violate the [C]onstitution" was improperly brought in a habeas petition); *Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1259, 1261 (11th Cir. 2009) (prisoner's claim

6

"involving lethal injection *procedures*" was improperly brought in a habeas petition (emphasis added)). None of the opinions decided the proper procedural vehicle for the type of method-of-execution challenge Nance presents, which the Court previously and incorrectly believed was foreclosed as a matter of substantive constitutional law. *See Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268, 1317 (11th Cir. 2016) ("[A] prisoner must identify an alternative that is 'known and available' *to the state in question . . . .*" (emphasis added)), *abrogated in part by Bucklew*, 139 S. Ct. 1112. Nance's appeal presented an issue of first impression, and the panel opinion does not conflict with any binding precedent.

Finally, the dissent argues that the Court should have reconsidered Nance's appeal en banc because the panel opinion may leave some prisoners without access to a federal forum in which to litigate their method-of-execution challenges, which the dissent says renders the appeal a question of exceptional importance for the full court. Dissent at 15. But the panel opinion does not close the federal courts to prisoners. Prisoners may allege in habeas petitions alternative methods of execution that are unauthorized by state law. And they may bring more traditional challenges to an execution protocol under section 1983. For example, Nance was free to insist that Georgia modify its venous-access protocol or choice of injection drug in his complaint under section 1983. All the panel opinion does is recognize that Congress denies us the power—regardless of whether a petitioner alleges a

violation of his substantive constitutional rights—to provide a forum or a remedy for a claim in an unauthorized second or successive habeas petition. *See* 28 U.S.C. § 2244(b). Federal courts do not have jurisdiction to provide the remedy for every right denied, and not every decision reflecting that fact is worthy of en banc review.

WILSON, Circuit Judge, joined by MARTIN and JORDAN, Circuit Judges, dissenting from the denial of rehearing en banc:

Michael Nance, a Georgia death-row prisoner, sought an injunction under 42 U.S.C. § 1983 to bar the state from executing him via lethal injection, and requested an alternate method of execution: firing squad.  Nance argued that, because of a unique medical condition, Georgia's lethal-injection protocol will violate his Eighth Amendment right to be free from cruel and unusual punishment. U.S. Const. amend. VIII.  Nance's veins lack sufficient structural integrity, meaning that medical technicians often have difficulty locating a vein from which to draw blood.  A prison medical technician told Nance that the execution team will have to "cut his neck" to carry out lethal injection because they will not otherwise be able to obtain sustained intravenous access.  During his execution, Nance will likely endure a prolonged and painful attempt to gain intravenous access.  Even if the execution team locates a vein, Nance's veins will not support an IV and there is substantial risk that his veins will lose their structural integrity and "blow," causing the injected chemical to leak into the surrounding tissue.  This will cause intensely painful burning and a prolonged execution that will feel like death by suffocation.

A panel of this court held that because lethal injection is the only authorized method of execution under Georgia law, granting Nance relief would "necessarily

9

imply the invalidity of his death sentence." *Nance v. Comm'r, Ga. Dep't of Corr.*, 981 F.3d 1201, 1203 (11th Cir. 2020). Consequently, the panel concluded that Nance's method-of-execution claim had to be brought as a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Next, the panel determined that Nance's claim was barred as a second or successive habeas petition. *Id.*

The resolution of this case turns on whether Nance's claim is a method-of-execution claim cognizable under § 1983, or whether it is a habeas claim disguised as a § 1983 claim to prevent the State from carrying out the execution at all. A majority of the court concluded that the panel decision does not merit en banc review. I disagree. En banc rehearing is appropriate when it is "necessary to secure or maintain uniformity of the court's decisions" or the case "involves a question of exceptional importance." Fed. R. App. P. 35(a). This case meets both criteria. The panel's decision disrupts intra-circuit uniformity and is irreconcilable with Supreme Court precedent. It also leaves prisoners like Nance who are to be executed cruelly and unusually without a remedy in federal court.

The Supreme Court held in *Nelson v. Campbell* that method-of-execution claims, like this one, are to be brought under § 1983. 541 U.S. 637 (2004). That case originated here in the Eleventh Circuit. *Nelson v. Campbell*, 347 F.3d 910 (11th Cir. 2003). In *Nelson*, we considered whether a prisoner could bring a § 1983 claim to challenge the method by which the State would administer his

10

lethal injection. *Id.* at 912. The majority held 2-1 that because the claim was really an attempt to prevent the State from carrying out the execution, it was cognizable only as a habeas petition. *Id.* And, because it would be Nelson's second or successive habeas petition, it was barred. *Id. But see id.* at 913–15 (Wilson, J., dissenting) (explaining "that the outcome of Nelson's petition has no effect on either his sentence or his conviction, and therefore cannot properly be construed under any circumstances as the equivalent to a subsequent habeas petition"). The Supreme Court granted certiorari and reversed in a 9-0 decision, holding that method-of-execution claims are cognizable under § 1983. *Nelson*, 541 U.S. 637.

To be sure, there is a difference between this case and *Nelson*. While the prisoner in *Nelson* did not object to being executed by lethal injection—provided it was administered more humanely—Nance claims that any type of lethal injection would be cruel and unusual because of his particular medical condition. He asks to be executed by firing squad instead—a method not currently permitted under Georgia law. But we faced a nearly identical § 1983 claim only years ago when a death-row prisoner challenged execution via lethal injection, and instead suggested a firing squad as an alternative method. *Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268 (11th Cir. 2016). There, we (mistakenly) held in a divided panel that the prisoner failed to state a claim, in part because "firing squad is not a

11

currently valid or lawful method of execution in Alabama." *Id.* at 1316. *But see id.* at 1321–33 (Wilson, J., dissenting) (noting that Utah had recently used the firing squad to execute a prisoner and therefore it was "a potentially viable alternative," so "Arthur may be entitled to relief . . . based on that method of execution").

The majority's holding in *Arthur* turned out to be wrong. *Bucklew v. Precythe*, 587 U.S. ___, 139 S. Ct. 1112 (2019). In *Bucklew*, the Supreme Court made clear that "[a]n inmate seeking to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law." *Id.* at 1128. A method-of-execution claim can allege that there is "a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Id.* at 1125 (citing *Baze v. Rees*, 553 U.S. 35, 52 (2008); *Glossip v. Gross*, 576 U.S. 863, 868–79 (2015)). And even if applicable state law does not authorize any such option, the prisoner "may point to a well-established protocol in another State as a potentially viable option." *Id.* at 1128. Justice Kavanaugh wrote separately in *Bucklew* to emphasize this point. *Id.* at 1136 (Kavanaugh, J., concurring) ("I write to underscore the Court's additional holding that the alternative method of execution need not be authorized under current state law—a legal issue that had been uncertain before today's decision.

12

Importantly, all nine Justices today agree on that point." (citations omitted) (citing *Arthur v. Dunn*, 580 U.S. ___, 137 S. Ct. 725, 729–31 (2017) (mem.) (Sotomayor, J., dissenting))). Shortly thereafter, we acknowledged the obvious: "*Bucklew* demonstrates our conclusion in *Arthur* was incorrect." *Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1326 (11th Cir. 2019) (per curiam).

It has since been well-established in our circuit that, not only can a prisoner plead a method of execution not authorized under state law, but § 1983 is the proper avenue of relief, and, as a corollary, such claims cannot be brought in habeas. *See McNabb v. Comm'r Ala. Dep't of Corr.*, 727 F.3d 1334, 1344 (11th Cir. 2013) (explaining that a challenge to the method of execution is properly brought under § 1983 and that issues to be raised in § 1983 are "mutually exclusive" of those to be raised in habeas); *Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1261 (11th Cir. 2009) (per curiam) (same); *see also Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006) (similarly explaining that a petition for habeas corpus and a complaint under § 1983 are mutually exclusive).

Consequently, it is not surprising that the State in this case did not even contest that Nance's complaint was cognizable under § 1983. The panel raised the issue sua sponte, just two weeks before oral argument, in an appeal involving death by execution, without giving the parties an adequate opportunity to prepare to address the issue.

13

The panel majority then dismissed Nance's claim, following the same line of reasoning that the Supreme Court rejected in *Bucklew*—but this time framing the defect as jurisdictional rather than as a failure to state a claim. *Nance*, 981 F.3d at 1203. The majority rationalized its approach using dicta from three Supreme Court decisions. *Nelson*, 541 U.S. at 644 ("In a State . . . where the legislature has established lethal injection as the preferred method of execution, a constitutional challenge seeking to permanently enjoin the use of lethal injection *may* amount to a challenge to the fact of the sentence itself." (citation omitted) (emphasis added)); *Hill v. McDonough*, 547 U.S. 573, 579 (2006) (same); *Bucklew*, 139 S. Ct. at 1128 ("[E]xisting state law *might* be relevant to determining the proper procedural vehicle for the inmate's claim." (emphasis added)).

None of this vaguely worded dicta is irreconcilable with construing a claim like Nance's as a civil rights claim rather than a habeas petition. Even assuming it is possible for a purported method-of-execution claim to cross the line between § 1983 and habeas (perhaps if the record made clear that the prisoner's intent was, in reality, to challenge his sentence itself), there is no support for the majority's view that pleading an alternative not authorized by state law necessarily precludes a claim from proceeding under § 1983, thereby jurisdictionally barring cases like these. If that were so, I find it inconceivable that the Supreme Court would not

14

have said as much when it emphasized that a prisoner can point to an alternative method of execution authorized in another State.

The Supreme Court has had to correct our prior decisions in this arena. I am concerned for this court's credibility if we refuse to listen to the Supreme Court and again must be corrected. At a minimum, the panel's decision will generate confusion in our circuit about how to bring method-of-execution claims. *Nance*, 981 F.3d at 1214, 1223 (Martin, J., dissenting). For these reasons, I would rehear the case en banc to provide much-needed clarity on this issue.

Nance's case also presents a question of exceptional importance necessitating en banc review. We bear great responsibility in overseeing the methods by which a State can kill its citizens. It is a great failure of this court today to ignore the impact of this decision on other death-row prisoners in our circuit. Especially here, where the stakes are particularly high because this decision would leave prisoners like Nance without a remedy in federal court—no matter how cruel and unusual the state's authorized method of execution might be.[2] The panel majority's holding not only "deprive[s] [Nance] of a claim he ha[s] every right to pursue," *id.* at 1218—it takes that right from death-row prisoners to

---

[2] At oral argument in *Nelson v. Campbell*, Justice Ginsburg expressed her concern with this conundrum through the following hypothetical: "[T]he State tells the inmate that they're going to hang him up by his thumbs and beat him with a whip until he dies." Transcript of Oral Argument at 35, *l*, 541 U.S. 637 (2004). What then would be his remedy?

15

come.  Along with Nance, they too may be executed without their constitutional claims ever making it past the courthouse door.

Nance did everything he was supposed to: he made a colorable claim, alleged sufficient facts, and proposed a viable remedy in accordance with *Bucklew*. But this court told him no anyway, claiming that "[n]o matter how you read it, Nance's complaint attacks the validity of his death sentence."  *Nance*, 981 F.3d at 1211.  Except, no matter how you read it, it doesn't.  There is no constitutional impediment to the State executing Nance by firing squad.  This much is clear in light of *Malloy v. South Carolina*, where the Supreme Court held that a legislative change in the mode of execution after a crime has been committed does not constitute an ex post facto violation.  237 U.S. 180, 185 (1915) ("The statute under consideration did not change the penalty—death—for murder, but only the mode producing this . . . .").  Numerous state courts have concluded the same.  *E.g.*, *Ex parte Granviel*, 561 S.W.2d 503, 510 (Tex. Crim. App. 1998) (en banc); *State ex rel. Pierce v. Jones*, 9 So. 2d 42, 46 (Fla. 1942); *State v. Brown*, 32 P.2d 18, 25 (Ariz. 1934); *Woo Dak San v. State*, 7 P.2d 940, 941 (N.M. 1932).  Therefore, by asking to be executed by firing squad, Nance is not seeking to avoid his execution. He accepts his fate.  He does not ask to be spared.  Nance asks only that the method by which the State will take his life falls in line with his Eighth Amendment right to be free of cruel and unusual punishment.

16

The constitutionality of the method of Nance's execution should have weighed heavily on this court. It should have been deemed worthy of en banc review. Sadly, by declining to rehear Nance's case, a majority of the court follows a pattern of employing faulty reasoning to bar relief from inhumane executions. I dissent from the denial of rehearing en banc.