Ivory DAVIS, Petitioner-Appellant,

v.

Gayle M. FRANZEN, et al.,
Respondents-Appellees.

No. 80–2540.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1982.

Decided March 5, 1982.

Janet F. Gerske, Jerome H. Torshen, Ltd., Chicago, Ill., for petitioner-appellant.

Jack Donatelli, Asst. Atty. Gen., State of Ill., Chicago, Ill., for respondents-appellees.

Before CUDAHY, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and POSNER, Circuit Judge.

POSNER, Circuit Judge.

Ivory Davis was convicted in a state court of Illinois of robbery and murder, and was sentenced to prison. His conviction was affirmed by the Illinois Appellate Court *sub nom. People v. Day*, 76 Ill.App.3d 571, 32 Ill.Dec. 39, 394 N.E.2d 1378 (1979), and the Illinois Supreme Court denied leave to appeal. Davis then filed a petition for habeas corpus in federal district court pursuant to 28 U.S.C. §§ 2241, 2254. The district judge denied the petition without ordering the respondent to show cause why the writ of habeas corpus should not be issued. He was authorized to dispose of the petition in this manner if it appeared from the petition itself, 28 U.S.C. § 2243, or, equivalently, if "it plainly appear[ed] from the face of the petition and any exhibits attached thereto," Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, that the petitioner was not entitled to relief.

Although the petitioner complains about the summary nature of the district judge's denial of the petition, and asks that we direct the judge to call for and examine the record of the state court proceedings and perhaps even grant an evidentiary hearing, these steps are neither necessary nor proper unless the factual allegations in the petition, if true, would show that the petitioner is being held in custody in violation of the Constitution or laws of the United States. So the first question we must consider—which may also be the last, depending on how we answer it—is whether the petition alleges such facts.

■ The petition alleges, first, that the prosecution did not present enough evidence to prove Davis guilty beyond a reasonable doubt of the crimes he was charged with. Technically, this allegation is insufficient to raise a constitutional issue. A conviction is not unconstitutional merely because the trier of fact makes a mistake and convicts a person on insufficient evidence; it is unconstitutional only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). But since the petitioner did not have the assistance of counsel in preparing his petition for habeas corpus, we shall give him the benefit of the doubt, see *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and assume that what he is really alleging is that no rational trier of fact could have found him guilty beyond a reasonable doubt on the basis of the evidence introduced at his trial.

■ Now it might appear that such an allegation could never be rejected by the habeas corpus judge without his examining the trial record to see whether it contained sufficient evidence to persuade a rational trier of fact of guilt beyond a reasonable doubt. But this is not so where, as here, the testimony at the trial is summarized in the state appellate court's opinion and the petitioner does not quarrel with that summary but simply contends that a rational trier of fact could not have inferred from it guilt beyond a reasonable doubt. The record relevant to that determination is the record as summarized in the reviewing court's opinion.

According to that opinion, two young black men held up a grocery store and one of them shot the owner to death; there were eyewitnesses but they were unable to identify Davis and his codefendant Day as the assailants. The two assailants were seen fleeing the store and getting into a car which drove away; again witnesses could not identify the men. However, William Tensley testified for the state that he was the driver of the car. He had dropped off Davis and Day who said they wanted to buy food in the store. He heard shots and then the two came out of the store "walking fast" and got into the back of the car. Tensley saw that Davis had a .32 caliber pistol (the caliber of the bullet that killed the store owner) and that both Davis and

Day had money. Tensley heard Day tell Davis, "I sure liked the way you popped that dude. I thought he had me for a minute but you came right up on time." (The store owner had had a pistol and had gotten off one shot before he was killed.)

■ Davis contended at trial, as he does in his petition for habeas corpus, that inconsistencies between Tensley's testimony and that of other witnesses show that Tensley's testimony was unreliable. For example, one witness testified that the two assailants ran from the store to the car, whereas Tensley testified that they were merely walking fast, and the same witness also testified that the car left at a high rate of speed whereas Tensley testified that he drove away at a normal rate of speed. The Illinois Appellate Court described these and the other inconsistencies noted by Davis as "very trivial," and we agree they were not so serious that no rational trier of fact could have believed Tensley and concluded that Davis and Day were guilty beyond a reasonable doubt.

■ The petition for habeas corpus also complains that Davis's Sixth Amendment right to confront the witnesses against him was denied by the admission in evidence of Tensley's statement, which was hearsay, that Day had said that Davis had "popped that dude." Davis does not question the constitutionality of the exception to the hearsay rule for co-conspirators' statements, but he contends that the evidence showing a conspiracy between him and Day was inadequate to lay a proper foundation for applying the exception. · However, Tensley's (other) testimony identifying Day and Davis as the robbers, together with the evidence of the witnesses who were in the store, was sufficient to show that Day and Davis acted in concert in robbing the store. This was all the foundation that was necessary to make Day's statement admissible against Davis.

■ In any event, this court has held that the admission of evidence in violation of the hearsay rule is not a per se violation of the Sixth Amendment. *United States v. Cogwell*, 486 F.2d 823, 832 n.5 (7th Cir. 1973). If it were, that would imply a

breathtaking expansion in constitutional law; in fact, the greater part of the law of criminal evidence would be constitutionalized at a stroke. This would be contrary to the frequently quoted statement in *Dutton v. Evans*, 400 U.S. 74, 88, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970), that, "From the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard." *Dutton* is an opinion for only four justices, though a fifth, Justice Harlan, concurring in the result, reached the same conclusion as the plurality under the due process clause of the Fifth Amendment rather than the confrontation clause of the Sixth Amendment. But this court follows the *Dutton* plurality opinion, see, e.g., *Cogwell, supra*, 486 F.2d at 834; *United States v. Regilio*, 669 F.2d 1169 at 1176 (7th Cir. 1981), and has extracted from it the proposition that the admission of hearsay evidence does not violate the constitutional right of confrontation if the witness offering the hearsay testimony (Tensley here) is cross-examined and "the circumstances under which the statement was made indicated the content of the statement was true." *Cogwell, supra*, at 834. Tensley was cross-examined; and there is reason to believe that if, as Tensley testified, Day .told Davis "I sure liked the way you popped that dude," Day was speaking truthfully. It is unlikely that in the circumstances (among friends, under conditions of great excitement conducive to spontaneity) Day would have made such a statement if he had not meant it; and it was a statement of a matter well within Day's ability to observe.

■ The remaining issue we discuss is whether Davis was denied the effective assistance of counsel, in violation of the Sixth Amendment, because he and Day were represented at their trial by lawyers from the same public defender's office. "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708,

1719, 64 L.Ed.2d 333 (1980). The petition for habeas corpus in this case contains no suggestion that Davis's counsel "actively represented conflicting interests." The petition recites that counsel moved for a severance, that counsel misled Davis, and that Davis tried to fire him. These allegations, even if true (and for purposes of this appeal we assume they are true), would not show an active conflict of interest. And in fact all the petition alleges is that there was a potential conflict of interest. That is not enough. There is always a potential conflict of interest when codefendants are represented by a single lawyer, but *Cuyler* makes clear that multiple representation is not a per se violation of the Sixth Amendment. There was no multiple representation in this case except in the somewhat attenuated sense that codefendants' lawyers were from the same public defender's office, and it is difficult to see how Davis would have been prejudiced even if he had been represented by the same lawyer as Day. The evidence against both defendants was the same; one could not have been exculpated without exculpation of the other. This distinguishes *Ross v. Heyne*, 638 F.2d 979, 982–85 (7th Cir. 1980), where this court sustained a claim that representation of codefendants by partners in the same law firm deprived the defendant of effective assistance of counsel, because the codefendants testified for the prosecution. This meant that the defendant could prevail only if his codefendants were disbelieved. That is the opposite of the present case.

The other grounds raised in the petitioner's pro se appeal brief are not discussed in the brief of his appointed counsel in this court, for the very good reason that they are frivolous. We shall not discuss them either.

AFFIRMED.