[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-10249

————————————————

JOSEPH WILLIAMS,

Petitioner-Appellant,

*versus*

WARDEN, GDCP

Respondent-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:12-cv-00106-WTM

————————————————

Before WILSON, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Petitioner-Appellant Joseph Williams appeals the district court's denial of his petition for a writ of habeas corpus. We granted a Certificate of Appealability (COA) as to the following claims:

1. Whether the district court violated Williams's due process rights by dismissing Claims 1(a)–1(c), 1(h)–1(m), 1(o), 1(r), 1(t), 1(x), 1(y), 1(aa)–1(dd), 1(ff), 1(gg), 1(ii), 1(jj), 1(ll), 1(oo), 1(qq)–1(ss), 1(uu)–1(aaa), 1(ccc)–1(ggg), and 1(iii) without giving Williams notice of its intent to dismiss these claims or an opportunity to respond.

2. Whether the district court violated Williams's due process rights by denying him leave to amend Claims 1(i), 1(j), 1(k), 1(l), 1(r), 1(t), 1(x), 1(aa), 1(bb), 1(ll), 1(qq), 1(xx), 1(iii), and Claim 2 after the court dismissed them as insufficiently pled under Rule 2(c) of the Rules Governing Section 2254 Proceedings.

After careful review and with the benefit of oral argument, we find that the district court violated the Supreme Court's directive in *Day v. McDonough*, 547 U.S. 198, 210 (2006), that a habeas petitioner is entitled to notice and opportunity to be heard before sua sponte dismissal of his petition. Williams's due process rights were violated because the district court failed to give him notice and afford him an opportunity to respond before sua sponte dismissing thirty-five of his claims. Thus, we vacate and remand to

the district court to provide Williams with notice and opportunity to address whether he sufficiently pled those thirty-five claims.

## I.    Factual Background

The facts surrounding Williams's underlying crime were summarized by the Supreme Court of Georgia in his direct appeal:

> [O]n July 24, 2001, Williams was a jail inmate at the Chatham County Detention Center. Seven other inmates, including Michael Deal, were being held in the same unit as Williams. Williams and four of the other inmates, Leon McKinney, Pierre Byrd, Michael Wilson, and John McMillan, discovered a loose window and used an improvised chisel to chip away at the wall around it. Deal inquired what the men were doing but left when he was told "to mind his own business." Williams and other inmates began to suspect that Deal had informed, or was going to inform, the jail authorities about the escape plan. McKinney suggested stabbing Deal with the improvised chisel, but Williams objected that there would be too much blood and that their plan would be frustrated. The group then carried out an alternative plan to strangle Deal and make the killing appear to be a suicide. McKinney engaged Deal in a discussion about their relative body sizes and then, facing Deal, lifted him in a "bear hug." Williams then began strangling Deal from behind with an Ace bandage. Deal fell to the floor but did not immediately lose consciousness. The evidence is unclear whether it was Wilson or Byrd, but one of those two men then assisted

Williams by taking one end of the Ace bandage and completing the strangulation in a "tug-of-war." Byrd invited Anthony King, an inmate who had been friendly with Deal, into Byrd's cell to distract King as Deal's body was moved. Williams then dragged Deal's body to Deal's cell, flushed the Ace bandage down the toilet, cleaned up blood and hair on the floor with a rag, flushed the rag, tied a bed sheet around Deal's neck, and finally, with the assistance of McKinney and McMillan, lifted Deal's body and tied the bed sheet to a grate in the ceiling to make the death appear to be a suicide. After the murder, Williams and Byrd favored also killing King and Dewey Anderson, but McKinney and McMillan objected. Byrd, later troubled by dreams about the victim, contacted his attorney, passed a note about the murder to a jail guard, and then directed authorities to the improvised chisel, the loosened window, and a letter about the murder written to him by Williams. Williams confessed in an audiotaped interview conducted by a [Georgia Bureau of Investigation] agent.

*Williams v. State*, 635 S.E.2d 146, 147–48 (Ga. 2006) (internal citation omitted).

## II.    Procedural Background

A Georgia grand jury charged Williams with one count of malice murder and one count of felony murder. Williams proceeded to trial in March 2004. But during the voir dire proceedings in April 2004, Williams stated that he wanted to plead guilty to malice murder. After a competency hearing, the trial court accepted

Williams's plea, Georgia *nolle prossed* the felony murder charge, and the trial proceeded to the sentencing phase.

At sentencing, Georgia presented evidence that established Williams had a history of violence, including murder convictions for two people, before these charges. In total, Georgia presented seventeen witnesses and focused on future dangerousness as a key theme of its case. Williams's counsel presented only two witnesses: a short-term pen pal and a mitigation specialist to provide evidence about mitigating factors.

The jury found beyond a reasonable doubt that the offense of murder was committed: (1) while the defendant was in a place of lawful confinement; and (2) by a person with prior convictions for murder and armed robbery. The jury fixed the sentence at death, and the state trial court judge accepted the recommendation of death.

Williams appealed to the Georgia Supreme Court, which affirmed his sentence in September 2006. *Williams*, 635 S.E.2d at 147–50. The U.S. Supreme Court denied Williams's petition for a writ of certiorari in April 2008. *Williams v. Georgia*, 553 U.S. 1004 (2008).

In 2009, Williams filed a state habeas petition arguing, among other claims, multiple ineffective assistance of counsel (IAC) claims and a prosecutorial misconduct claim. After an evidentiary hearing, the state habeas court denied relief as to the IAC claims on the merits and found the prosecutorial misconduct claim

procedurally defaulted.  The Georgia Supreme Court denied Williams's application for a certificate of probable cause.

In April 2012, Williams filed his 28 U.S.C. § 2254 petition, alleging nine claims.  Relevant to this appeal, Williams raised an ineffective assistance of counsel (IAC) claim, which he broke into 61 subclaims (Claim 1), and a prosecutorial misconduct claim (Claim 2).  The Warden of the Georgia Department of Corrections answered, arguing that the prosecutorial misconduct claim was procedurally defaulted because the state habeas court found the same claim defaulted.  The Warden next admitted that the IAC claim was "properly before this court for review . . . [and] reviewable under § 2254(d)," but still denied the allegations and noted that they were "properly rejected on their merits by the state habeas corpus court."

The Warden then moved for a scheduling order that would impose a truncated schedule to resolve all the claims. Williams opposed, asking the court to implement a scheduling order that would allow him to seek discovery and request an evidentiary hearing before addressing the procedural issues and the merits.  The district court granted the motion for a scheduling order by providing a timeline for Williams to request discovery and move for an evidentiary hearing.  Then the parties would brief "the issues of procedural default, cause and prejudice, and fundamental miscarriage of justice."  Once briefing was completed, the district court would issue an order on procedural issues.  Lastly, following briefing, the court would rule on the merits of Williams's petition.

From January 2013 through March 2018, Williams moved for discovery and sought an evidentiary hearing. In September 2017, Williams filed his brief on procedural issues, noting that his ineffective assistance of counsel claim was not procedurally defaulted, to which the Warden had before agreed. Williams argued that his prosecutorial misconduct claim was not procedurally defaulted. The Warden responded that the prosecutorial misconduct claim and thirty-three of the IAC subclaims in Claim 1 were procedurally defaulted and that ten of the IAC subclaims[1] were insufficiently pled under Rule 2(c) of the Rules Governing Section 2254 Proceedings (hereinafter Habeas Rules). The Warden conceded that twelve of the subclaims, including Claims 1(t) and 1(qq), were properly before the district court. Williams replied that the state was on notice of all his ineffective-assistance subclaims.

In an April 2019 order, the district court addressed the procedural issues. The court first found that the state had expressly waived its ability to raise any exhaustion challenge to Williams's ineffective-assistance-of-counsel claims in its original response. But then the court found that forty of the IAC subclaims, Claims 1(a)–1(c), 1(h)–1(m), 1(o), 1(r), 1(t), 1(x), 1(y), 1(aa)–1(dd), 1(ff), 1(gg), 1(ii), 1(jj), 1(ll), 1(oo), 1(qq)–1(ss), 1(uu)–1(aaa), 1(ccc)–1(ggg), and 1(iii), were insufficiently pled under Rule 2(c). Therefore, these claims were not properly before the court and could not be asserted in the merits briefing. But the court ordered that Williams brief his

---

[1] Those claims are: 1(a), 1(g), 1(w), 1(aa), 1(ee), 1(ll), 1(mm), 1(nn), 1(uu), and 1(iii).

general claim that counsel was ineffective for failing to properly investigate and present evidence of his mental health and background at trial, using those remaining subclaims in Claim 1 that the court found were adequately pled. As to Claim 2, the court found that this claim was insufficiently pled, as Williams provided no factual detail to support his conclusory allegation that the state had suppressed evidence. It also found that Williams procedurally defaulted on this claim by failing to raise it on direct appeal, and Williams could not establish cause and prejudice.

In July 2019, Williams moved for reconsideration, asserting that many subclaims in Claim 1 were adequately pled. He also argued that the district court violated his due process rights by dismissing forty of the subclaims in Claim 1 without providing him with notice and an opportunity to amend. Williams requested leave to amend his petition to correct the deficiencies in Claims 1(i), 1(j), 1(k), 1(l), 1(r), 1(t), 1(x), 1(aa), 1(bb), 1(ll), 1(qq), 1(xx), and 1(iii).[2] The Warden opposed, explaining that Williams had not properly requested leave to amend his petition as required by Federal Rule of Civil Procedure 15(a), nor had he offered any reason as to why his claims were not known to him when he filed his original petition in April 2012.

The district court denied Williams's motion, finding: (1) the dismissed claims were insufficiently pled under Rule 2(c), and (2) Williams had ample opportunity to provide the evidence

---

[2] Williams attached an exhibit that included factual allegations as to those thirteen claims.

necessary to conform his claims to Rule 2(c)'s requirements. The district court noted two seemingly conflicting Advisory Committee Notes regarding Rule 2. On one hand, the Notes direct district courts to accept a defective petition, subject to the condition that the petitioner submit a corrected petition. Yet the Notes also refer to a court's ability to dismiss an entire habeas petition at the onset of a case. The district court pointed out that it had not dismissed all of Williams's claims but rather allowed him to litigate multiple issues for several years. It also found that, while Williams was on notice that the court intended to thoroughly review which claims he would be permitted to brief on the merits, Williams did not supplement his claims with the necessary factual support. Therefore, the court denied Williams's motion for reconsideration and leave to amend his petition.

As to the merits, the district court denied Williams's § 2254 petition and denied a COA. The court reviewed the state court's denial of these three IAC claims concerning his trial counsel: (1) trial counsel performed ineffectively in failing to investigate his background; (2) trial counsel performed ineffectively in failing to present testimony from his family members; and (3) trial counsel performed deficiently in failing to present a mental health expert at trial. With each claim, the court found that the state's denial was not contrary to, or an unreasonable application of, federal law, nor based on an unreasonable determination of the facts. The court also found that, under de novo review, counsel did not perform deficiently in failing to present evidence about Williams's past

sexual abuse. Williams moved for reconsideration, which the district court denied. Williams timely appealed.

Williams moved for a COA on several claims. This court granted a COA on whether Williams's due process rights were violated by the dismissal of several subclaims of his ineffective assistance of counsel claim and the denial of leave to amend those subclaims. Williams moved for reconsideration to add whether his due process rights were violated by the denial of leave to amend on his prosecutorial misconduct claim. A divided panel granted Williams's motion.

## III.    Analysis

"We review a district court's decision to dismiss a petition for a writ of habeas corpus *de novo*." *San Martin v. McNeil*, 633 F.3d 1257, 1265 (11th Cir. 2011).

Under Rule 4 of the Habeas Rules, a district court must "promptly" examine a § 2254 petition and, "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition." Thus, district courts are authorized to summarily dismiss a habeas petition that is legally insufficient on its face. *See McFarland v. Scott*, 512 U.S. 849, 856 (1994).

Although the rules allow for dismissal, the Supreme Court clarifies that "before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." *Day*, 547 U.S. at 210. Taking the directive from *Day*, this court explained that a district court may only sua sponte dismiss a

§ 2254 motion under Rule 4 if it provides the petitioner with notice of its intent to dismiss and an opportunity to respond. *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 654–55 (11th Cir. 2020) (per curiam).

This notice-and-opportunity-to-be-heard requirement is not express in Rule 4's text but conforms with bedrock conceptions of due process. "The 'essential requirements of due process' are notice and . . . [an] opportunity to respond." *Laskar v. Peterson*, 771 F.3d 1291, 1297 (11th Cir. 2014) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)); *see also Richards v. Jefferson Cnty.*, 517 U.S. 793, 797 n.4 (1996) ("The opportunity to be heard is an essential requisite of due process of law in judicial proceedings.").

With this in mind, we must determine whether the district court complied with *Day* in giving Williams notice and an opportunity to be heard, thus affording Williams his due process.

As a preliminary matter, five of the forty claims dismissed by the district court were brought to Williams's attention in the Warden's brief on procedural issues. Williams only made a conclusory assertion that he sufficiently pled those claims, without any added explanation. Williams received notice and had the opportunity to respond to the Warden's arguments, but he did not do so. We are disinclined to say that there was a due process violation when the Warden informed Williams that his claims were insufficiently pled, and Williams received notice and had a meaningful opportunity to respond but did not. But as to the remaining thirty-five claims, the

Warden asserts that Williams received the required notice and received a meaningful opportunity to be heard.[3]  We disagree.

The Warden asserts that the Habeas Rules provided Williams with notice that the court could sua sponte dismiss his petition for failing to comply with the pleading requirements by pointing to our decision in *Borden v. Allen*, 646 F.3d 785 (11th Cir. 2011). But *Borden* does not stand for that proposition.  Instead, *Borden* required this court to determine whether the summary dismissal of the petitioner's "constitutional claims under [Alabama Rule of Criminal Procedure] 32.6(b) were adjudications on the merits" or dismissals on state procedural grounds.  646 F.3d at 808.  Although *Borden* mentions the Habeas Rules, it does so as "an abstract comparison of Alabama's post-conviction scheme to federal habeas rules." *Id.* at 813.  Thus, *Borden*'s language as to the Habeas Rules is merely dicta.  *See Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections,* 36 F.4th 1100, 1119 (11th Cir. 2022) ("*Dicta* are defined as those portions of an opinion that are

---

[3] The Warden also asserts that the district court did not sua sponte dismiss those remaining claims; instead, the district court acted at the Warden's suggestion. *See Velchez v. Carnival Corp.*, 331 F.3d 1207, 1210 (11th Cir. 2003) (explaining that the court did not act on its own when it granted the plaintiff's motion for remand on different grounds).  Williams's case is distinguishable because the Warden argued that only ten of Williams's claims were insufficiently pled and conceded at the district court (and at oral argument before us) that other claims were sufficiently pled. Yet the district court went further and granted more relief than what the Warden had requested.

not necessary to deciding the case then before us." (internal quotations omitted)).

Instead, we find our decision in *Paez*—rendered post-*Day*—to be instructive. In *Paez*, the magistrate judge took judicial notice of postconviction filing and order dates, recommending the sua sponte dismissal of the petition under Rule 4 as untimely. 947 F.3d at 651. The district court adopted the Report and Recommendation over the petitioner's objection. *Id.* We affirmed dismissal based on Rule 4's text, the Advisory Committee Notes to Rule 4, and Supreme Court precedent. *Id.*

First, we noted that Rule 4's text applies to both procedural bars and merits-based deficiencies. *Id.* at 653–54. The rest of our discussion did not distinguish between these two types of deficiencies. Second, we explained that the point of Rule 4 is for district courts "'to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.'" *Id.* at 654 (quoting Rules Governing § 2254 Cases, R. 4 advisory committee notes). Third, we relied on *Day*'s ruling that a district court may sua sponte dismiss a § 2254 petition "provided the court 'accord[s] the parties fair notice and an opportunity to present their positions.'" *Id.* (quoting *Day*, 547 U.S. at 210).

We held that the district court "complied with *Day* and Rule 4" given that the petitioner "was provided ample notice and opportunity to explain why his petition was timely in his form petition and again when he was given the opportunity to respond to the

magistrate judge's Report and Recommendation that his petition be summarily dismissed as untimely." *Id.* at 655.[4]

Unlike in *Paez*, here, Williams was not provided notice or an opportunity to be heard before thirty-five of his claims were sua sponte dismissed. There was no report and recommendation that provided notice, so Williams had no opportunity to object. Instead, Williams believed the district court was considering issues the parties raised in their procedural-issues briefing and ended up with thirty-five of his claims (that were unchallenged by the state on these grounds) dismissed. Further aggravating the lack of notice here was the timing of the sua sponte dismissal. The Warden's response to Williams's petition did not make any argument that any of the claims were insufficiently pled in 2012. And the district court did not "promptly" review Williams's petition as Rule 4 requires. The arguments about insufficient pleading did not arise until 2017, when the Warden filed his brief on procedural issues. And it wasn't until 2019—seven years after Williams filed his claims—that the district court dismissed the thirty-five claims, without notice, as

---

[4] Applying *Paez* in the § 2255 context, we vacated and remanded a district judge's sua sponte dismissal of a petition as untimely because the petitioner there "was not provided with sufficient notice and opportunity to be heard." *Otero-Pomares v. United States*, No. 23-10079, 2024 WL 3103488, at *3 (11th Cir. June 24, 2024) (per curiam). Unlike in *Paez*, the petitioner in *Otero-Pomares* had neither notice nor an opportunity to be heard. *Id.* Although an unpublished opinion, *Otero-Pomares* proves instructive in determining what amounts to proper notice and opportunity. Sua sponte dismissal, without notice, does not meet that standard.

22-10249            Opinion of the Court                15

insufficiently pled.  The district court erred by not providing Williams notice before sua sponte dismissing those thirty-five claims.

Our holding aligns with the Sixth Circuit's decision in *Shelton v. United States*, 800 F.3d 292 (6th Cir. 2015).  There, "[w]ithout notifying [the petitioner] or asking him to show cause, the district court on its own initiative dismissed the [§ 2255] motion as untimely."[5]  *Id.* at 293.  The Sixth Circuit vacated the district court's dismissal because "the *sua sponte* dismissal left him with no opportunity to challenge the arguments that the district court invoked in finding the motion untimely."  *Id.* at 295.  The court acknowledged that Rule 4 "does not discuss (and more to the point, does not preclude) a notice requirement," but relied on the fact that "a notice requirement [is] compatible with the rule" and "promotes accuracy at the screening stage."  *Id.*

The same principles animating *Day*, *Paez*, and *Shelton* apply here.[6]  We have already deemed a notice-and-opportunity-to-be-heard requirement consistent and applicable to Rule 4 dismissals.

---

[5] Although *Shelton* concerned a § 2255 motion, and Williams brought a § 2254 petition in this case, Judge Sutton, in *Shelton*, expressly held that "*Day*'s notice requirement" applies to both § 2254 petitions and § 2255 motions.  800 F.3d at 294.  Indeed, the notice-and-opportunity discussions laid out in *Day* and *Paez* did not depend on language that differs between Rule 4 of the Rules Governing Section 2254 and Rule 4 of the Rules Governing Section 2255.  So we may conclude that *Shelton*'s holding applies to both sections.

[6] These cases concern dismissals based on timeliness, and the dismissal here was based on insufficient pleadings under Rule 2(c)'s heightened pleading requirements.  But we think the reasons to apply the notice-and-opportunity-to-be-heard requirements apply with at least equal vigor here.

*See Paez*, 947 F.3d at 654–55; *see also Shelton*, 800 F.3d at 295.  It ensures that petitioners have the opportunity to raise facts and legal arguments relevant to the court's decision up front, reducing the likelihood of mistakes, misunderstandings, and appeals.  And permitting sua sponte dismissal based on insufficient pleadings without notice to the petitioner would leave petitioner "with no opportunity to challenge the arguments that the district court invoke[s]" to dismiss the claims.  *Shelton*, 800 F.3d at 295.

The cases the dissent cites are not to the contrary.  First, the dissent cites *Bundy v. Wainwright*, 808 F.2d 1410 (11th Cir. 1987), *Granberry v. Greer*, 481 U.S. 129 (1987), and *McFarland v. Scott*, 512 U.S. 849 (1994), for the proposition that district courts may summarily dismiss habeas petitions that are facially deficient.  These cases predate *Day* and *Paez*, and they are not controlling here.  The same is true of *Davis v. Frazen*, 671 F.2d 1056 (7th Cir. 1982), and *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993).

Nor are the cases the dissent cites postdating *Day* on point.  In *Clark v. Waller*, the Sixth Circuit determined that, when a state court's factual findings are disputed, the district court is not required to review the state court's record before summarily dismissing a facially deficient habeas petition.  490 F.3d 551, 554–56 (6th Cir. 2007).  The question was not whether to allow the petitioner an opportunity to be heard before dismissing his petition on its face.  Indeed, in addition to Clark's petition itself, Clark filed an accompanying memorandum stating the purported factual basis for his claims.  *Id.* at 554.

22-10249                Opinion of the Court                17

*McNabb v. Commissioner Alabama Department of Corrections*, 727 F.3d 1334 (11th Cir. 2013), is similarly not on point. Asking for the opportunity to file a brief in support of one's claims goes a step further than asking for the opportunity to be heard. In *McNabb*, we declined to grant a habeas petitioner an affirmative "right to briefing in his habeas proceeding" before the district court may dismiss his petition on the merits. *Id.* at 1340. And in that case, the petitioner did have notice of the deficiencies in his petition: the state filed an 89-page answer. *See id.* at 1348 (Jordan, J., concurring). As we observed then, when the state filed a motion requesting a ruling on the issues that, it argued, were procedurally barred, "McNabb could have requested leave of court to file a brief on the merits of his petition before the district court ruled, or he could have filed a brief because the scheduling order provided a time table for such filing. Instead, McNabb remained silent and did not raise any challenge to this procedure until he filed his Rule 59(e) motion." *Id.* at 1340.

The Prison Litigation Reform Act cases the dissent cites not only predate *Day*, but also examine a different statutory context;[7] and their facts do not present the same notice-and-opportunity-to-be-heard concern at issue here. *See Vanderberg v. Donaldson*, 259 F.3d 1321, 1324 (11th Cir. 2001) (observing that "Plaintiff was given an opportunity to object to the magistrate judge's report before the

---

[7] *See, e.g.*, *Anderson v. Singletary*, 111 F.3d 801, 805 (11th Cir. 1997) ("[I]t is clear to us that Congress promulgated the PLRA to curtail prisoner tort, civil rights and conditions litigation, not the filing of habeas corpus petitions.").

18                    Opinion of the Court                    22-10249

district court entered its final order" in concluding that "[t]he com-
plained of procedure did not deny Plaintiff due process"); *Farese v.
Scherer*, 342 F.3d 1223, 1227 (11th Cir. 2003) (analyzing the consti-
tutionality of the Prison Litigation Reform Act § 1915(d)).

Last, the dissent contends that any due process error in this
case would have been harmless. Not so. "We have said that the
complete denial of the opportunity to be heard on a material issue
is a violation 'of due process which is never harmless error.'"
*United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) (quoting
*Republic Nat'l Bank of Dallas v. Crippen*, 224 F.2d 565, 566 (5th Cir.
1955)). The dissent argues that Williams had the opportunity to be
heard in his petition and in his motion for reconsideration. But as
*Smith* itself bears out, review under a motion for reconsideration is
limited. *See, e.g.*, *Abram v. Leu*, 759 F. App'x 856, 861 (11th Cir. 2019)
(per curiam); *see also Smith*, 30 F.4th at 1338 (observing that "when
Mr. Smith moved for reconsideration he understandably only ad-
dressed whether he was eligible for relief" under the First Step Act
and not whether he was entitled to a sentence reduction on the
merits).      [8]In    sum,    the    notice-and-opportunity-to-be-heard

---

[8] The dissent notes that the district court also found that Williams would not
have been granted leave to amend his subclaims because the district court
found that the request to amend was unduly delayed. This does not change
the analysis. As described above, the timing of the sua sponte dismissal here
aggravates, rather than excuses, the lack of notice issue. Williams had no no-
tice of the argument that any of his claims were insufficiently pled in 2012; the
claims were dismissed seven years later on these grounds. Any delay in the
request for leave to amend was of the district court's own making in failing to
"promptly" review Williams's petition, as required by Rule 4.

requirement laid out in *Day* and *Paez* applies in this case. This requires actual notice from the court or the opposing party that the petitioner's pleading is deficient, and it requires the opportunity for the petitioner to respond to that notice. That did not occur here. Because the district court did not provide Williams with notice or an opportunity to be heard on the thirty-five claims dismissed based on insufficient pleadings, we must vacate the district court's dismissal as to those claims.[9]

The Warden further asserts that Williams's motion for reconsideration meets the standard for an opportunity to respond but provides no support that a motion for reconsideration suffices.[10] In fact, the Warden points us to an unpublished decision where we

---

[9] The purpose of Rule 4, which is to "eliminate the burden that would be placed *on the respondent* by ordering an unnecessary answer," *Paez*, 947 F.3d at 654 (quoting Rules Governing § 2254 Cases, R. 4 advisory committee notes) (emphasis added), is unaffected by the holding here because the respondent still has no need to answer or respond until the district court so orders—and that's only if the district court agrees with the petitioner that the claims should survive a Rule 4 assessment. Not only that, but the brief time it takes to allow a petitioner to be heard before the sua sponte dismissal of his claims is trivial compared to the risk of dismissing claims within a habeas petition that should have been permitted to proceed.

[10] The Warden also argues that, using the Habeas Rules, Williams was given an opportunity to be heard in the petition itself that his claims were not insufficiently pled. Although the Habeas Rules require facts to support each ground for relief, we decline to broadly read that the Habeas Rules automatically provide a petitioner an opportunity to respond to a yet-to-be-asserted argument about insufficient pleading. Such a ruling could not be squared with *Day* and *Paez*, which referred to an opportunity to be heard beyond the petition itself.

were "hesitant to conclude" that a motion for reconsideration "provided a *meaningful* opportunity to be heard given the narrow grounds for granting reconsideration." *Abram*, 759 F. App'x at 861. We vacated the district court's dismissal of the complaint because the court failed to provide a meaningful opportunity to respond. *Id.*

*Abram*, in turn, relied on our previous decision, *Arthur v. King*, 500 F.3d 1335 (11th Cir. 2007) (per curiam). In *Arthur*, this court explained that the grounds for granting a motion for reconsideration are strictly limited to "'newly-discovered evidence or manifest errors of law or fact.'" 500 F.3d at 1343 (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)). Because of that, a motion for reconsideration cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005).

Given a motion for reconsideration's limited review,[11] we find that a motion for reconsideration does not provide a petitioner with a meaningful opportunity to respond. We are in good company with other circuits who have done so. *See, e.g.*, *Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022) ("[B]ecause a motion for

---

[11] In the district court's order on Williams's motion for reconsideration, the district court construed its authority to reconsider the order under Federal Rule of Civil Procedure 54(b) because it was an order that adjudicated fewer than all the claims. Despite this classification, the district court recognized the limited review that it was undertaking. We find that this classification does not impact our analysis.

reconsideration provides a narrow basis for relief and precludes the petitioner from re-litigating issues already decided or raising arguments that could have been made prior to the entry of judgment, it is not an adequate opportunity for a petitioner to be heard."); *Herbst v. Cook*, 260 F.3d 1039, 1044 (9th Cir. 2001) ("[A] motion for reconsideration is not an adequate substitute opportunity for a habeas petitioner to respond when a district court *sua sponte* dismisses the petition."); *Hill v. Braxton*, 277 F.3d 701, 707–08 (4th Cir. 2002) (holding that a motion for reconsideration does not provide a habeas petitioner an adequate opportunity to be heard).

Considering our precedent and our sister circuits' reasoning, we find that Williams did not receive notice or an adequate opportunity to be heard—as required by *Day*—on whether his thirty-five claims were sufficiently pled.

## IV.     Conclusion

By vacating and remanding, we merely find that Williams did not have the requisite notice and opportunity to be heard in a meaningful way before this sua sponte dismissal. On remand and with the benefit of Williams's full response, we leave it to the sound discretion of the district court as to whether those claims should still be dismissed as insufficiently pled. Thus, we **vacate and remand** the district judge's order that sua sponte dismissed thirty-five

of Williams's IAC claims with instructions for the district court to provide Williams with notice and an opportunity to be heard.[12]

**VACATED & REMANDED.**

---

[12] Because we vacate and remand as to the first COA issue, we decline to address the second COA issue (whether the district court violated Williams's due process rights by denying him leave to amend his ineffective assistance of counsel claims). To avoid due process concerns and violations of *Day*, we recommend district courts issue a show cause order regarding why a petition should not be sua sponte dismissed for being insufficiently pled. Doing so should not limit the court in considering any possible motions for leave to amend under Federal Rule of Civil Procedure 15(a)(2), which states that leave to amend should be freely given "when justice so requires."

We must also briefly address Claim 2, the prosecutorial misconduct claim. This court improperly added the claim to its COA without proper consideration of the alternative ground that the claim was procedurally defaulted. Williams does not contest that he failed to raise Claim 2 on direct appeal. We improperly granted the COA to include Claim 2 and thus vacate that part of the COA. As a result, Williams may not address Claim 2 on remand.

22-10249                    Luck, J., Dissenting                    1

Luck, Circuit Judge, dissenting:

Joseph Williams has "killed many men" over the years. *Williams v. State*, 635 S.E.2d 146, 148 (Ga. 2006) (quoting a letter from Williams to one of his surviving victims whom he threatened to kill while she testified at his murder trial). While he was serving a sentence in Georgia state prison for one murder, Williams strangled another prisoner, Michael Deal, because Williams believed Mr. Deal was going to tell prison officials about Williams's escape plan. *Id.* at 147–48. Williams pleaded guilty and was sentenced to death for murdering Mr. Deal, *id.* at 147 n.1, but he has been challenging his conviction and sentence ever since. They were affirmed on direct appeal, *id.* at 149, and the United States Supreme Court denied certiorari review, *Williams v. Georgia*, 553 U.S. 1004 (2008). Williams's state habeas petition was denied, and the Georgia Supreme Court denied his certificate of probable cause application.

Then, Williams sought federal habeas relief. He filed a petition for writ of habeas corpus in the Southern District of Georgia pursuant to 28 U.S.C. section 2254, alleging (among other things) that his trial and appellate lawyers deprived him of his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments. Williams split his ineffective assistance of counsel claim into sixty-one subclaims. But many of the subclaims did not "state the facts supporting each ground" and did not "specify all the grounds for relief available to the petitioner" as required by the federal habeas rules. *See* Rule Governing § 2254 Cases 2(c); *McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Habeas corpus petitions must

2                    Luck, J., Dissenting                    22-10249

meet heightened pleading requirements . . . ." (citing Rule Governing § 2254 Cases 2(c)); *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) ("The § 2254 Rules and the § 2255 Rules mandate 'fact pleading' as opposed to 'notice pleading,' as authorized under Federal Rule of Civil Procedure 8(a)."). For example, Williams alleged that: "[c]ounsel failed to present its case and arguments to the jury in a logical, effective manner"; "[c]ounsel failed to adequately challenge the traverse jury"; "[c]ounsel failed to subpoena documents and witnesses in a timely and adequate manner"; and "[c]ounsel failed to object to defects in the charging documents." There was more of the same in the other subclaims. "Such generalized allegations are insufficient in habeas cases." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1265 (11th Cir. 2014).[1] Combing through Williams's petition,

---

[1] In *Hittson*, the petitioner alleged that:

> [S]tate habeas counsel failed to pursue obvious avenues of investigation, resulting in a failure to raise meritorious and potentially meritorious claims. Ineffective Assistance claims which Mr. Hittson believes are "substantial" and which have "some merit" were available to be litigated in state habeas proceedings but post-conviction counsel unreasonable failed to raise them.

> Undersigned counsel represents, upon information and belief, that Mr. Hittson's original habeas attorneys performed no investigation beyond the limited investigation performed by Mr. Hittson's trial attorneys into Mr. Hittson's background. In fact, original habeas counsel appear to have raised only claims which were apparent from a review of the trial transcript, failing to look beyond the record in order to determine whether

the district court found that forty subclaims were insufficiently pleaded under the federal habeas rules and did not allow Williams to address them further.

The question for us on appeal is whether the district court violated Williams's due process rights by summarily dismissing the forty subclaims as facially insufficient without any further briefing from the parties. After reviewing the federal habeas rules and statutes, and the decisions of the Supreme Court, our court, and our sister circuits, I believe the answer is no.

## I.

Rule 4 of the Rules Governing Section 2254 Cases sets the procedure for handling habeas petitions in the district court. The clerk must "promptly forward the petition to" the district court, and the district court "must promptly examine it." Rule Governing § 2254 Cases 4. "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief," the district court "must dismiss the petition." *Id.* Rule 4 also tells the district court when to notify the petitioner. After the district court

> Mr. Hittson's trial attorneys failed to discover, for instance, available and compelling mitigation evidence. Further, original habeas counsel failed, absent any reasonable explanation, to bring a claim which was apparent from the record.

*Hittson*, 759 F.3d at 1264–65 (ellipses omitted). We found that these allegations "d[id] not satisfy [r]ule 2(c)'s requirements." *Id.* at 1265. As the district court properly concluded, if the *Hittson* petitioner's more robust allegations did not satisfy the fact-pleading requirements, then Williams's subclaims didn't satisfy them either.

dismisses the petition, the rule says the district court must "direct the clerk to notify the petitioner" of the dismissal. *Id.*; *see also id.* advisory committee's note (1976) ("If it plainly appears from the face of the petition and any exhibits attached thereto that the petitioner is not entitled to relief in the district court, the judge must enter an order summarily dismissing the petition and cause the petitioner to be notified."). If the "petition is not dismissed" as plainly insufficient, the district court must order "an answer, motion, or other response within a fixed time, or take other action"—like an order to show cause. *See id.* That's the first time the rule mentions a response.

The procedure in rule 4 flows from 28 U.S.C. section 2243. "[U]nder [section] 2243 it is the duty of the court to screen out frivolous applications . . . ." Rule Governing § 2254 Cases 4 advisory committee's note (1976). The district court does this by "forthwith"—that is, without delay—"award[ing] the writ or issu[ing] an order directing the respondent to show cause why the writ should not be granted, *unless* it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243 (emphasis added). As we explained in *Bundy v. Wainwright*, 808 F.2d 1410 (11th Cir. 1987), section 2243 gives the district court three options for handling habeas petitions: "(1) grant the writ, or (2) issue an order directing the respondent to show cause why it should not be granted, or (3) it may summarily dismiss the petition for facial insufficiency under the proviso of [section] 2243" if "it appears from the application that the applicant or person detained is not entitled thereto." *Id.* at 1414–15 (quotation omitted).

22-10249                LUCK, J., Dissenting                5

The Supreme Court understands the rule 4 procedure the same way. In *Granberry v. Greer*, 481 U.S. 129 (1987), for example, the Court addressed "whether the [s]tate's failure to raise nonexhaustion in the district court constitutes a waiver of that defense in the court of appeals." *Id.* at 130 (footnote omitted). After discussing the various approaches, the Court settled on "an intermediate approach" and "direct[ed] the courts of appeals to exercise discretion in each case to decide whether the administration of justice would be better served by insisting on exhaustion or by reaching the merits of the petition forthwith." *Id.* at 131, 133. One example the Court gave for when the administration of justice would be better served by reaching the merits was when "it is perfectly clear that the applicant does not raise even a colorable federal claim." *Id.* at 135. "The [r]ules governing [section] 2254 cases in the United States district courts leave open this possibility," the Court explained, "because [r]ule 4 authorizes a district judge summarily to dismiss a habeas petition if 'it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court.'" *Id.* at 135 n.7 (quoting Rule Governing § 2254 Cases 4).

The Supreme Court made a similar observation in *McFarland*. There, the question was whether a capital defendant's right to counsel in federal habeas proceedings attaches before the petition is filed or after. *McFarland*, 512 U.S. at 851. The Court concluded that "the right to appointed counsel adheres prior to the filing of a formal, legally sufficient habeas corpus petition." *Id.* at 855. This made sense, the Court explained, because "[r]equiring an

indigent capital petitioner to proceed without counsel . . . would expose him to the substantial risk that his habeas claims never would be heard on the merits" since "[f]ederal courts are authorized to summarily dismiss any habeas petition that appears legally insufficient on its face." *Id.* at 856 (citing Rule Governing § 2254 Cases 4).

We have explicitly rejected the argument that a district court violates a petitioner's due process rights by summarily dismissing a petition as facially insufficient without ordering the parties to respond. In *McNabb v. Commissioner Alabama Department of Corrections*, 727 F.3d 1334 (11th Cir. 2013), the petitioner argued that "the district court violated his procedural due process rights when it decided the merits of his habeas claims without allowing him an opportunity to submit a brief in support of his claims." *Id.* at 1339. Even though the district court had issued a scheduling order laying out that it would "determine first whether any claims were procedurally barred" and the petitioner "should have been able to rely upon the court's scheduling order," we concluded that "the failure of the district court to give notice to the parties that it would decide the merits of the claims without briefing does not rise to the level of a due process violation." *Id.* This was so, we explained, because the rules governing section 2254 cases "do not specifically provide for briefing before a district court disposes of a habeas petition." *Id.* at 1339–40. The habeas rules, we continued, provide "that the petition must specify all grounds for relief, state the facts supporting all [the] grounds, and state the relief requested," and if it doesn't, the district court "must dismiss" the petition "[i]f it plainly

22-10249               LUCK, J., Dissenting                    7

appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.* at 1340 (alteration in original) (quoting Rule Governing § 2254 Cases 4). By following the rule 4 procedure, "we conclude[d] that the district court did not violate [the petitioner's] due process rights." *Id.*

And, in *Borden*, we confirmed that a district court may summarily dismiss a facially insufficient habeas petition. *See* 646 F.3d at 810. In that case, we had to decide whether a state court's "summary dismissals" of the petitioner's "constitutional claims" under a state procedural rule "were adjudications on the merits." *Id.* at 808. In deciding that they were, we compared the state procedure to the federal habeas rules, which "closely resemble[d]" the state rule we had to analyze. *Id.* at 809. Under the federal habeas rules, we wrote, "[f]ederal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face, *see* 28 U.S.C. § 2254 Rule 4." *Id.* at 810 (quoting *McFarland*, 512 U.S. at 856). When summarily dismissing the habeas petition under rule 4, we said, "[t]he judge acts sua sponte"—that is, on her own without hearing from the parties. *Id.* (emphasis removed).

Our conclusion in *McNabb* and *Borden* is consistent with what we've said about the similar summary dismissal procedure in the Prison Litigation Reform Act. Congress, as part of the Act, required that district courts dismiss cases from prisoners proceeding in forma pauperis "at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The summary dismissal rule, like the

habeas rule, "allows a district court to sua sponte dismiss a claim of . . . a plaintiff proceeding in forma pauperis for failure to state a claim before service of process." *Vanderberg v. Donaldson*, 259 F.3d 1321, 1323 (11th Cir. 2001) (emphasis removed). In *Farese v. Scherer*, 342 F.3d 1223 (11th Cir. 2003), the prisoner "argue[d] that [section] 1915(e)(2)(B)(ii) violate[d] [in forma pauperis] plaintiff[s'] . . . due-process rights because it allow[ed] courts to dismiss [in forma pauperis] cases sua sponte based on a failure to state a claim." *Id.* at 1227 n.5. We concluded that the prisoner's "argument . . . [wa]s without merit" because "due process 'does not always require notice and the opportunity to be heard' and, thus, '[t]he complained of procedure"—sua sponte dismissal—"did not deny [the prisoner] due process.'" *Id.* (alterations in original) (quoting *Vanderberg*, 259 F.3d at 1324).

Our sister circuits have also explained that a district court may summarily dismiss a habeas petition that appears insufficient on its face without further briefing from the petitioner. In *Davis v. Frazen*, 671 F.2d 1056 (7th Cir. 1982), for example, "[t]he district judge denied the [habeas] petition without ordering [the state] to show cause why the writ of habeas corpus should not be issued." *Id.* at 1057. "Although the petitioner complain[ed] about the summary nature of the district judge's denial of the petition," the Seventh Circuit concluded that the district court "was authorized to dispose of the petition in this manner if it appeared from the petition itself, or, equivalently, if 'it plainly appear(ed) from the face of the petition and any exhibits attached thereto,' that the petitioner was not entitled to relief." *Id.* (alteration in original, internal

citation omitted) (quoting Rule Governing § 2254 Cases 4).  Because the face of the petition did not show that the petitioner was entitled to relief, the court affirmed the summary dismissal.  *See id.* at 1057–59; *see also Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993) (affirming summary dismissal of a habeas petition under rule 4 that "authorizes a district court to conduct an initial screening of petitions and to dismiss unworthy requests for habeas corpus relief").

And similarly, in *Clark v. Waller*, 490 F.3d 551 (6th Cir. 2007), "[t]he district court summarily dismissed [the habeas] petition, without ordering the state to respond, and, as far as the record indicate[d], without directly examining the records of the state court proceedings."  *Id.* at 554.  On appeal to the Sixth Circuit, the petitioner argued "that the procedural rules of 28 U.S.C. [section] 2243 and [r]ule 4 require a more probing inquiry than the district court" provided.  *Id.* (internal citation omitted). The court disagreed and affirmed.  *See id.* at 554–56, 558.

*Day v. McDonough*, 547 U.S. 198 (2006) is not to the contrary. There, the Supreme Court addressed a different question: "whether a district court may dismiss a federal habeas petition as untimely under [the Antiterrorism and Effective Death Penalty Act], despite the [s]tate's failure to raise the one-year limitation in its answer to the petition or its erroneous concession of the timeliness issue."  *Id.* at 205.  *Day*, in other words, did not involve a dismissal for facial insufficiency.  *See id.*  Instead, *Day* addressed a different kind of dismissal based on the statute of limitations.  *Id.*  Statute-of-limitations dismissals are different, the Supreme Court

explained, because "information essential to the time calculation is often absent—as it was in [*Day*]—until the [s]tate has filed, along with its answer, copies of documents from the state-court proceedings." *Id.* at 207 n.6. Indeed, as our sister circuits have explained, "the statute of limitations question is more in the nature of an affirmative defense that constitutes an avoidance of the petitioner's allegations apart from the merits of the petition," and thus "the applicability of [this] affirmative defense is often not apparent from the face of the petition," *Hill v. Braxton*, 277 F.3d 701, 705–06 (4th Cir. 2002) (cleaned up), especially considering that a statute-of-limitations analysis involves a fact-intensive equitable tolling inquiry that further precludes summary dismissal. *See Shelton v. United States*, 800 F.3d 292, 295 (6th Cir. 2015) (citing *Day*, 547 U.S. at 207 n.6). A facial-insufficiency dismissal, on the other hand, does not involve a fact-intensive inquiry and, thus, does not depend on a response from the parties or documents from the state-court proceeding. It is based only on the face of the petition, and the dismissal is not an avoidance apart from the merits but acts as "a judgment that the claims presented are nonmeritorious." *Borden*, 646 F.3d at 812.

Paez v. Secretary, Florida Department of Corrections*, 947 F.3d 649 (11th Cir. 2020) is also not to the contrary. Like *Day*, *Paez* involved a dismissal based on the statute of limitations, *id.* at 651 (describing the issue as "whether it was error to dismiss [the] petition as untimely without ordering the Secretary to respond"), and not because the allegations were facially insufficient to state a claim for

22-10249                 Luck, J., Dissenting                 11

relief.[2] In any event, *Paez* did not hold that the district court was required to give notice and an opportunity to be heard before dismissing on timeliness grounds. Rather, we concluded that it was not error to dismiss the petition after giving notice and an opportunity to be heard. *Id.* at 653. Because the district court in *Paez* did give notice and an opportunity to be heard before dismissing the petition, we could not have decided whether it would be error to summarily dismiss a petition without them. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("[R]egardless of what a court says in its opinion, the decision can hold nothing beyond the facts of that case.").

## II.

Even if the district court had to give Williams notice and an opportunity to be heard before final judgment was entered on his subclaims, he had both here. First, the federal habeas rules gave Williams sufficient notice. Rule 2 gave him notice that he had to "specify all the grounds for relief" and "state the facts supporting each ground." Rule Governing § 2254 Cases 2(c). Rule 4 gave him notice that the failure to do so "must" result in summary dismissal. Rule Governing § 2254 Cases 4; *Borden*, 646 F.3d at 810 ("Rule 4 . . .

---

[2] For the same reason, *Shelton* is just as unhelpful as *Day* and *Paez*. In *Shelton*, as in those cases, the district court summarily dismissed a habeas petition based on the statute of limitations. 800 F.3d at 293. The Sixth Circuit reversed because the petitioner was unable "to bring essential information not evident from the face of the [petition] to the court's attention, including the possibility that equitable tolling applie[d]." *Id.* at 295.

12                    LUCK, J., Dissenting                    22-10249

puts the petitioner on notice of what is likely to happen if his petition fails to comply with the fact pleading requirements.").  And Williams's petition—which was forty-two pages of facts and legal argument for why he was entitled to relief—was his opportunity to be heard on whether his claims were sufficiently pleaded.  *See Paez*, 947 F.3d at 655 (explaining that the petitioner's "form petition" was an opportunity to be heard, along with his objections to the magistrate judge's report); *see also McNabb*, 727 F.3d at 1348 (Jordan, J., concurring) (concluding that that the petitioner "was heard on his claims" based on his "habeas corpus petition" that "in essence functioned like briefs or memoranda").

Second, the district court's order put Williams on notice that his subclaims were insufficiently pleaded.  And his motion to reconsider that order provided him with an opportunity to be heard.  In his reconsideration motion, Williams addressed the issue head on, arguing that his subclaims were, in fact, adequately pleaded.  "Each of the allegations," he wrote, "identified a particular act or omission of counsel and accordingly could not be deemed merely 'conclusory.'"

The district court properly treated Williams's motion as a request to reconsider its interlocutory procedural order under Federal Rule of Civil Procedure 54(b).  *See* Fed. R. Civ. P. 54(b) (stating that "any order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of judgment adjudicating all the claims"); *see also Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 227 (5th Cir. 2020); *Cobell v. Jewell*, 802 F.3d 12, 25

22-10249            LUCK, J., Dissenting            13

(D.C. Cir. 2015).  Under this rule, the district court was allowed to amend its interlocutory procedural order at any time before judgment "as justice require[d]." *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985) (Breyer, J.) (quotation omitted); *see also Cobell*, 802 F.3d at 25 (explaining that amendment under Rule 54(b) is "more flexible" than review under Rule 59(e), "reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires").[3]  This afforded Williams another opportunity to convince the district court that his subclaims were sufficiently pleaded.  However, after "a careful review of [the c]ourt's prior ruling and [Williams's] [m]otion for [r]econsideration, the [c]ourt s[aw] no reason to revisit its dismissal of [Williams's] claims."

---

[3] Other circuits have said that a motion for reconsideration under Federal Rule of Civil Procedure 59(e) is not a sufficient opportunity to be heard because "[a] district court has the discretion to grant a [r]ule 59(e) motion only in very narrow circumstances:  (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; and (3) to correct a clear error of law or prevent manifest injustice." *Hill*, 277 F.3d at 708 (quotation omitted); *see also Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022); *Herbst v. Cook*, 260 F.3d 1039, 1043–44 (9th Cir. 2001).  But "[r]ule 59(e) motions are motions to alter or amend a *judgment*, not any nonfinal order." *Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999) (emphasis in original).  Because Williams's "motion sought reconsideration of an order granting judgment on fewer than all the claims," "[r]ule 59(e) for revising final judgments does not apply." *Six Dimensions*, 969 F.3d at 227; *Cobell*, 802 F.3d at 25 ("The decision was interlocutory and thus the reconsideration motion should have been treated as filed under [r]ule 54(b).").

Williams's reconsideration motion was similar to the petitioner's opportunity to be heard in *Turner v. Secretary, Department of Corrections*, 991 F.3d 1208 (11th Cir. 2021).  There, the habeas petitioner conceded his petition was untimely, and the district court sua sponte dismissed his petition.  *Id*. at 1209–10.  In its summary dismissal order, the district court explained that the petitioner could file a motion to reopen the case if he believed the district court committed a clear error.  *See id*. at 1210.  Instead of taking that opportunity, the petitioner appealed the summary dismissal and argued it violated his due process rights, citing *Paez* for support.  *See id*. at 1212.  We concluded that the petitioner's due process rights were not violated and affirmed the sua sponte dismissal.  *Id*. at 1212–13.  We explained that "[n]owhere in [*Paez*] did we require a report and recommendation" to provide due process.  *Id*. at 1212.  Instead, we found that the district court gave the petitioner all that was required:  "an opportunity to reopen his case if he could show that the district court's determination . . . was incorrect."  *Id*. (quotation omitted).

### III.

Even if the district court's summary dismissal violated Williams's due process rights, any error would have been harmless.  *See Tenn. Secondary Sch. Athletic Ass'n v. Brentwood Academy*, 551 U.S. 291, 303 (2007) ("Even accepting the questionable holding that [the defendant's] closed-door deliberations were unconstitutional, we can safely conclude that any due process violation was harmless beyond a reasonable doubt."); *United States v. Rodriguez*, 75 F.4th 1231, 1249 n.9 (11th Cir. 2023) ("We acknowledge that this due

22-10249               Luck, J., Dissenting                15

process violation is subject to harmless-error review."); *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 744 (11th Cir. 2014) ("The appellants' arguments regarding an alleged denial of due process also lack merit because any such violation was harmless."); *United States v. Watkins*, 320 F.3d 1279, 1284 (11th Cir. 2003) ("Appellants' due process claims sounding in the district court's failure to afford them notice of the November 5, 2001 hearing are similarly unavailing; even assuming that appellants were impermissibly deprived of notice of the ancillary hearing, this error was harmless beyond any doubt."); *United States v. Jones*, 1 F.3d 1167, 1171 (11th Cir. 1993) ("*Paslay* also indicated that, because failure to give notice implicates due process rights, review of a *Burns* violation would be subject to a test of harmless error beyond reasonable doubt.").

Any error would be harmless because we already know from Williams's reconsideration motion exactly how he would respond to a show cause order, and why it would not change the result. Williams would respond that his subclaims "were in fact adequately pled," and to the extent that they weren't, he should be given leave to amend.[4] But, as I explained above, his subclaims didn't "state the facts supporting each ground." *See* Rule

---

[4] Elsewhere "[w]e have said that the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error," *United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) (quotation omitted), but this is not a "complete denial" case because, even if they were insufficient in the end, Williams had some opportunity to be heard in his petition and in his reconsideration motion. The *Smith* defendant had no opportunity (even an insufficient one). *See id.*

16                    LUCK, J., Dissenting                    22-10249

Governing § 2254 Cases 2(c)(2).   And he would not have been granted leave to amend because, as the district court found, his amendment was unduly delayed.  *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) ("We are unable to say that the court abused its discretion in denying leave to amend because of undue delay.").

⋆   ⋆   ⋆   ⋆

For these reasons, I would affirm the district court's summary dismissal of Williams's subclaims.  Because the majority opinion concludes otherwise, I respectfully dissent.